IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| for the use and benefit of | * | |
| ALBAN TRACTOR COMPANY, INC. | * | |
| | * | |
| v. | * | Civil No. CCB-12-1538 |
| | * | |
| HUDSON INSURANCE COMPANY. | * | |
| | * | |
| | * | |
| | ****** | |

**MEMORANDUM**

Alban Tractor Co. ("Alban") brings this suit under the Miller Act, 40 U.S.C. § 3133, to collect payment under a payment bond issued in connection with a government construction project. Alban rented equipment to Kayden Premier Enterprises, Inc. ("Kayden"), a subcontractor on the project, and Kayden allegedly has not paid its bills. Hudson Insurance Co. ("Hudson"), the surety on the payment bond, has moved to dismiss the complaint for failure to comply with the Miller Act's notice requirement. For the reasons stated below, the motion will be granted in part and denied in part.

According to the complaint, Cain Contracting Co. ("Cain") contracted with the United States to construct or repair the Fort Meade Veteran's Outpatient Clinic, a public building. Because the amount of the contract exceeded $100,000, the Miller Act required Cain to furnish a payment bond to the United States to protect subcontractors and others supplying labor or materials to the project. *See* 40 U.S.C. § 3131(b). Cain executed a payment bond in September 2010, with Hudson acting as surety. (Compl. Ex. A, ECF No. 1-1.)

Cain hired Kayden to perform certain work on the project. Kayden, in turn, engaged Alban to provide rental equipment, including parts and services, to support Kayden's work on

1

the project. Alban began renting equipment to Kayden in early 2011 pursuant to numerous rental contracts. Alban allegedly provided timely invoices to Kayden for all equipment, services, and materials that had been provided, but Kayden failed to pay the bills.

Unable to collect the owed amounts directly from Kayden, Alban provided notice to Cain and Hudson of its claim against the payment bond on August 4, 2011. The claim, in the amount of $76,440.01, sought to recover all amounts owed for equipment and materials furnished by Alban to Kayden between February 1, 2011, and May 10, 2011. The following month Alban, Cain, and Kayden entered into a joint check agreement in an effort to settle the outstanding balance owed to Alban. Under the terms of that agreement, "all payments from Cain to Kayden would be made jointly payable to Kayden and Alban until all monies owed to Alban under the Project were paid in full." (Compl. ¶ 19.)

Alban allegedly received payment for most of its outstanding invoices and rented additional equipment to Kayden in December 2011 and January 2012.[1] A dispute subsequently arose between Cain and Kayden, however, and Alban stopped receiving payments under the joint check agreement. Alban then "amended" its bond claim on April 12, 2012, to state a revised outstanding balance of $24,548.77. (Compl. Ex. G, ECF No. 1-7.) Alban filed this suit on May 22, 2012.

Hudson seeks to dismiss the action because Alban purportedly failed to provide the requisite notice of its claim within the statutory timeframe. A second-tier subcontractor that has no direct relationship with the general contractor that furnished the payment bond cannot bring a civil action on the payment bond unless the second-tier subcontractor provides notice of its claim

---

[1] A spreadsheet attached to Alban's complaint indicates that Alban received three payments under the joint check agreement for a total of $69,453.15. (*See* Compl. Ex. D, ECF No. 3.) Alban alleges that it is owed an additional $5,936.19 for the equipment provided through May 2011. (*Id.*)

"within 90 days from the date on which [it] did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(b)(2). Alban therefore cannot bring suit on the payment bond unless it provided notice of its claim within ninety days of the date on which it last supplied equipment to Kayden.

Alban has plausibly alleged that its August 2011 notice was sufficient with respect to all equipment and services provided through May 2011. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (stating that complaint survives motion to dismiss if it "state[s] a claim to relief that is plausible on its face"). The August 4, 2011, notice stated that Alban was owed a total of $76,440.11 for "equipment rental and necessary materials furnished by Alban . . . from February 1, 2011 through May 10, 2011." (Compl. Ex. E, ECF No. 1-5.)[2] August 4 was less than ninety days after May 10. The parties dispute whether Kayden returned the equipment on May 4 or May 10, but this court will not pierce the pleadings on a motion to dismiss and resolve that factual dispute. Alban attached to its complaint a spreadsheet indicating that the equipment was returned on May 10, (*see* Compl. Ex. D), and the allegation that May 10 is the correct date is thus "plausible."

Alban's April 2012 notice, on the other hand, was untimely. On its face, the April 12, 2012, notice appears to be timely, as it purportedly related to equipment supplied through January 14, 2012—eighty-nine days earlier. (*See* Compl. Ex. G.) But Hudson notes that, according to the invoices attached to the complaint, the last equipment was returned to Alban on December 28, 2011. Alban, for its part, does not dispute that the equipment was returned on

---

[2] In deciding a motion to dismiss, the court "may consider documents attached to the complaint, as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (internal citations omitted). There is no dispute about the authenticity of the documents attached to the complaint.

December 28. Alban instead seeks to resuscitate its claim by arguing that (1) the April 2012 notice amended and related back to the August 2011 notice and accordingly did not constitute a new claim subject to the Miller Act's timeliness requirement, or, alternatively, (2) the April 2012 notice was not subject to the ninety-day notice requirement because Alban had established a direct contractual relationship with Cain. Neither argument survives scrutiny.

As noted above, the Miller Act requires a claimant to provide notice of its claim within ninety days of the date on which it last supplied the materials "for which the claim is made." 40 U.S.C. § 3133(b)(2). Alban's April 2012 letter notified Cain and Hudson of its claim with respect to equipment supplied through December 28, 2011—106 days before Alban provided notice. Thus, the notice was plainly untimely.

"It would be quite unfair to the general contractor to expose it to stale claims of which it had no notice during the ninety day period." *U.S.* ex rel. *Honeywell, Inc. v. A&L Mech. Contractors, Inc.*, 677 F.2d 383, 386 (4th Cir. 1982).[3] The purpose of the ninety-day notice requirement is to allow general contractors to make final payments to subcontractors after waiting a reasonable amount of time to determine whether there are outstanding claims by second-tier subcontractors. *See id.* That purpose would be flouted by a judicial rule allowing claimants to file amended notices months or years after a project has been completed. *Cf. Pepper Burns Insulation, Inc. v. Artco Corp.*, 970 F.2d 1340, 1343 (4th Cir. 1992) (stating that Miller Act notice requirement must be strictly construed). Alban's April 2012 letter provided

---

[3] *A&L Mechanical Contractors* involved similar facts. A Miller Act claimant provided notice of its claim in November 1979—within ninety days of providing the relevant labor and materials—and subsequently provided additional notice in May 1980 for work that had been completed in January. The court noted, albeit in *dicta*, that "[t]he ninety days from the January 22, 1980 completion date had run before the May 7 notice." *A&L Mech. Contractors*, 677 F.2d at 385. Although the claimant in that case made no effort to argue that its May 7 notice related back to and amended the prior notice, the court strongly suggested that it would not have found such an argument persuasive.

notice of a new claim and therefore neither amended nor related back to its August 2011 notice. Because Alban sent the notice 106 days after the equipment had been supplied, it was untimely.[4]

Alban also had no direct relationship with Cain and thus was not exempt from the Miller Act's notice requirement. *See* 40 U.S.C. § 3133(b)(2) (stating that ninety-day notice requirement applies only to persons lacking express or implied contractual relationship with contractor who furnished payment bond). Alban contends that it formed a direct contractual relationship with Cain when it entered into the September 2011 joint check agreement. Alban cites no case law to support this argument, however, and the courts that have considered the issue have rejected Alban's argument. *See, e.g.*, *U.S.* ex rel. *Light & Power Utils. Corp. v. Liles Constr. Co.*, 440 F.2d 474, 478 (5th Cir. 1971); *U.S.* ex rel. *State Elec. Supply Co. v. Hesselden Constr. Co.*, 404 F.2d 774, 777 (10th Cir. 1968). Indeed, Alban's argument previously has been appraised and rejected in this district. *See U.S.* ex rel. *Fordham v. P.W. Parker, Inc.*, 504 F. Supp. 1066, 1070–72 (D. Md. 1980). The joint check agreement[5] between Cain, Kayden, and Alban was not an "enforceable contractual commitment" and simply represented an agreement to cooperate. *See id.* at 1072. Alban therefore never established a direct contractual relationship with Cain and was required to provide timely notice of its claim.

Even if the joint check agreement created a contractual relationship between Cain and Alban, moreover, it was not the type of "direct contractual relationship" contemplated by the

---

[4] Alban contends that this outcome would be an "undue burden" on second-tier subcontractors because it would compel them to "file an initial notice of claim and then file another separate notice of claim every 90 days to add more unpaid invoices." (Pl.'s Sur-reply at 3–4.) Alban fundamentally misunderstands the notice requirement. Second-tier subcontractors such as Alban need not provide separate notices every ninety days; they can provide a single notice within ninety days of "perform[ing] the last of the labor or furnish[ing] or suppl[ying] the last of the material for which the claim is made." *See* 40 U.S.C. § 3133(b)(2). If the second-tier subcontractor elects to send notice of its claim before it has finished supplying labor and materials, however, it must provide timely notice of additional claims that subsequently accrue.
[5] A copy of the agreement was attached to Alban's complaint. (Compl. Ex. F, ECF No. 1-6.)

Miller Act. *See U.S.* ex rel. *Metal Mfg., Inc. v. Fed. Ins. Co.*, 656 F. Supp. 1194, 1198–99 (D. Ariz. 1987). The Miller Act exempts subcontractors from the notice requirement because the general contractor already has notice of claims made by subcontractors: the subcontractors submit their invoices directly to the general contractor. But second-tier subcontractors submit their invoices to the subcontractor rather than the general contractor, and consequently the general contractor has no notice of the outstanding invoices unless such notice is provided by the second-tier subcontractor. *Cf. U.S.* ex rel. *Greenwald-Supon, Inc. v. Gramercy Contractors, Inc.*, 433 F. Supp. 156, 161 (S.D.N.Y. 1977) (finding that direct contractual relationship existed where contractor promised second-tier subcontractor that it would not pay subcontractor until verifying that second-tier subcontractor's bills had been paid). When Alban supplied additional equipment to Kayden in December 2011 and January 2012, Cain was not a party to those transactions. To seek payment of its invoices directly from Cain, Alban needed to provide timely notice to Cain that the invoices remained unpaid.

Accordingly, Alban may pursue its claim on the payment bond for any unpaid labor and materials provided through August 2011. Its April 2012 notice was untimely, however, and Alban's claim against Hudson for labor and materials provided between August 2011 and January 2012 will be dismissed. A separate order follows.


<u>February 11, 2013</u>                                     <u>      /s/      </u>
Date                                                       Catherine C. Blake
                                                            United States District Judge